**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| James A. Onofre, Jr.,<br><br>Plaintiff,<br><br>v.<br><br>Florence County and McLeod Regional Medical Center,<br><br>Defendants. | C/A No. 4:26-cv-0800-JD-KDW<br><br>**ORDER AND OPINION** |

This matter is before the Court for review of the Report and Recommendation ("Report") of United States Magistrate Judge Kaymani D. West (DE 33), recommending dismissal of pro se Plaintiff James A. Onofre, Jr.'s First Amended Complaint (DE 29) without prejudice and without issuance and service of process. Plaintiff filed timely, detailed objections (DE 36), which the Court has reviewed de novo. For the reasons below, the Court adopts the Report as modified and supplemented herein, overrules the objections insofar as they seek continuation of the action, and dismisses the First Amended Complaint without prejudice.

## I. BACKGROUND

Plaintiff commenced this action on February 26, 2026, alleging constitutional and state-law violations arising from an involuntary emergency mental-health detention in June 2021. (DE 1.) After the Magistrate Judge identified an apparent limitations problem and afforded an opportunity to amend (DE 18), Plaintiff filed the First Amended Complaint on May 15, 2026. (DE 29.)

According to that pleading, officers removed Plaintiff from a private residence in Florence County on June 14, 2021, placed him in handcuffs, and transported him to McLeod Regional Medical Center ("McLeod") under an emergency examination order issued through the Florence County Probate Court. (DE 29 at 3–5.) Plaintiff alleges the order was based on an uncorroborated affidavit from Roy Crigger describing Plaintiff's beliefs and conduct; that no officer explained the legal basis for the seizure; and that he committed no threatening act. (*Id.* at 3–5.) At McLeod, Plaintiff alleges that security personnel conducted an intrusive visual strip search, he was confined for about approximately forty-three hours and forty minutes, and prescribed benzodiazepine medications were abruptly discontinued. (*Id.* at 4, 6–7.) He was released on June 16, 2021. (*Id.* at 2.)

Plaintiff states that he was not provided with the probate order or affidavit at the time of detention and did not learn their contents until he received McLeod records on January 7, 2026. (*Id.* at 2–4.) He also alleges that Florence County officials refused or restricted access to associated probate and law-enforcement records in late 2025 and January 2026. (*Id.* at 3–5; DE 29-2 at 2–6; DE 29-3 at 2.) The Amended Complaint asserts four federal counts involving an unlawful seizure, an unreasonable search, procedural due process, and First Amendment retaliation or viewpoint discrimination; it also alleges false imprisonment and negligence under state law. (DE 29 at 5–7.) Plaintiff names Florence County and McLeod as defendants. (*Id.* at 2.)

The Magistrate Judge recommended dismissal because the claims arising from the June 2021 detention are time-barred, Plaintiff did not plead a basis for equitable tolling, and the asserted Florence County policies did not establish municipal liability. (DE 33 at 4–8.) The Report recommended declining supplemental jurisdiction over the state-law claims. (*Id.* at 8–9.) Plaintiff filed extensive objections challenging screening, accrual, tolling, municipal liability, the treatment of post-detention record requests, and the proposed disposition of the state-law claims. (DE 36.) By text order entered June 30, 2026, the Court recognized the objections as timely. (DE 37.)

## II. STANDARD OF REVIEW

A magistrate judge's report is a recommendation, and the district court retains responsibility for the final determination. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3), the Court must determine de novo those portions of a report to which specific objections are made. In evaluating pro se objections, the Court must look to whether the grounds for disagreement are sufficiently identified, not whether the arguments are new. *Elijah v. Dunbar*, 66 F.4th 454, 460–61 (4th Cir. 2023). Plaintiff's objections identify specific challenges to the Report, and the Court has undertaken de novo review of the contested issues. The Court reviews any unobjected-to portions for clear error. *Diamond v. Colonial Life & Accident Insurance Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

Because Plaintiff proceeds in forma pauperis, the Court must dismiss a complaint that fails to state a claim on which relief may be granted. 28 U.S.C. §

1915(e)(2)(B)(ii). This screening provision applies whether or not a plaintiff is incarcerated. Pro se pleadings are construed liberally, and factual allegations are accepted as true, but the complaint must still plausibly state a cognizable claim. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). An apparent limitations bar may be addressed at initial screening when the defense plainly appears from the face of the complaint. *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655–56 (4th Cir. 2006).

## III. DISCUSSION

### A. Screening and the Timing of the 2021 Claims

Plaintiff argues that deciding accrual and tolling before service improperly converts initial screening into an adversarial merits adjudication. (DE 36 at 2–4, 13–15.) The objection does not defeat screening authority. Section 1915(e)(2)(B) expressly requires review of an indigent litigant's complaint, and *Eriline* permits consideration of a facially apparent limitations bar in that setting. The Court does not resolve disputed evidence or the underlying constitutionality of the commitment process; it evaluates whether the pleaded facts permit the action to proceed.

Section 1983 contains no limitations period. The Court borrows South Carolina's three-year residual personal-injury period, S.C. Code Ann. § 15-3-530(5), but federal law governs accrual. *See Wallace v. Kato*, 549 U.S. 384, 387–88 (2007); *Smith v. Travelpiece*, 31 F.4th 878, 883–84 (4th Cir. 2022). Ordinarily, a claim accrues when the plaintiff has a complete and present cause of action; determining when that occurs requires identifying the particular constitutional injury and the applicable

common-law accrual rule. *See Smith*, 31 F.4th at 883–84. Under the ordinary inquiry-notice rule, accrual does not await awareness that conduct was legally actionable or possession of every item of supporting proof. *See Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc); *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 886–87 (4th Cir. 2023).

The seizure, search, and confinement claims arose from events Plaintiff personally experienced between June 14 and June 16, 2021. He knew he had been handcuffed, taken from the residence, searched, confined, and released without receiving the explanation and procedures he believed were required. (DE 29 at 3–7.) The Fourth Amendment seizure and search theories and the alleged failure to provide procedural protections thus accrued no later than the termination of the detention on June 16, 2021. Absent applicable tolling, the three-year period expired no later than June 16, 2024, well before this action was filed on February 26, 2026.

Plaintiff contends that the First Amendment theory and aspects of his due-process claim could not accrue until January 2026, when he learned the affidavit's contents and the alleged absence of supporting judicial records. (DE 36 at 5–6, 14–15.) The Court has considered these theories separately. Although the later disclosures may have supplied evidence of the asserted motive or procedural deficiencies, Plaintiff already knew of the seizure and detention and that he had received none of the notice or opportunity to be heard he claims were required. His acquisition of further information concerning why the detention occurred does not, on the facts pleaded, defer accrual. *See Nasim*, 64 F.3d at 955. The Court does not hold

that every constitutional theory necessarily accrues on the same date; rather, the particular injuries alleged in Counts I–IV were experienced during the June 2021 events. Similarly, Plaintiff's alleged falls and medical consequences in 2022 and 2023 do not identify a new unconstitutional act after the asserted discontinuation of medication in 2021. *See Epcon*, 62 F.4th at 887–89 (distinguishing the continuing effects of an earlier constitutional injury from a new violation).

**B. Tolling, Concealment, and the Asserted Extraordinary Circumstances**

Plaintiff argues that the Report improperly isolated his allegations rather than considering their cumulative effect: absence of the detention paperwork, alleged official obstruction of access to probate and law-enforcement records, financial and housing instability, falls and head injuries in 2022 and 2023, limited technological and legal resources, and inability to obtain medical records until January 2026. (DE 29 at 2–4; DE 36 at 7–11.) The Court has evaluated those circumstances individually and together.

Although federal law governs when a § 1983 claim accrues, applicable state tolling rules generally accompany the borrowed limitations period unless inconsistent with federal law. *See Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 484–86 (1980); *see also Estate of Valentine v. South Carolina*, 611 F. Supp. 3d 99, 117–19 (D.S.C. 2019). South Carolina equitable tolling is an exceptional doctrine that requires circumstances justifying suspension of the otherwise applicable period. Diligence and a causal connection between the impediment and untimely filing remain central considerations. *See Estate of Valentine*, 611 F. Supp. 3d at 118–19; cf.

*Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (addressing equitable tolling in the federal habeas context).

At screening, the Court accepts Plaintiff's allegations that he was not furnished the commitment papers during his detention and that, after release, he sought to obtain probate and law-enforcement records. (DE 29 at 2–4.) Those assertions are significant, but the Amended Complaint does not describe the dates or particulars of any request or follow-up effort during the limitations period ending in June 2024. The specific correspondence attached to the Amended Complaint concerns late 2025 and January 2026. (DE 29-2 at 2–6; DE 29-3 at 2.) Whatever its significance to a later records-access theory, those responses do not plausibly show that the County's conduct prevented Plaintiff from filing a claim based on the seizure, search, and confinement he experienced in 2021 before the limitations period expired.

The later discovery of the affidavit and detention order is not necessarily the discovery of a previously unknown injury. Plaintiff knew that the seizure and search occurred and alleges that he received no explanation or procedural protections at the time. The Court has considered *Harrell v. BMW of N. America, LLC*, 517 F. Supp. 3d 527, 540–43 (D.S.C. 2021), which addressed alleged concealment of a latent product defect. That decision does not require tolling here, where the pleaded constitutional injuries were experienced in 2021, and the complaint lacks sufficiently particularized facts connecting concealment to the failure to pursue those known injuries within three years. The Court has considered the asserted lack of meaningful access to

records and legal resources but finds the necessary connection to the filing delay insufficiently pleaded.

Plaintiff's asserted medical events and periods of economic instability are serious allegations, but the pleading does not describe a qualifying statutory disability existing when the claims accrued or facts showing that those circumstances prevented timely filing for the relevant duration. *See* S.C. Code Ann. § 15-3-40. Nor do unfamiliarity with legal procedure and limited computer access, viewed cumulatively with the remaining allegations, demonstrate that Plaintiff could not reasonably have initiated an action based upon his known injuries within three years. The Court, therefore, agrees with the Report's conclusion that the pleaded facts do not establish a basis to toll the limitations period, while supplementing its analysis to distinguish federal accrual from applicable state tolling principles.

**C. Florence County and the Alleged Policies or Customs**

Plaintiff next objects that the Report failed to recognize the actual practices identified in Section VI of the Amended Complaint. (DE 36 at 11–13.) The Court agrees with this limited criticism: Plaintiff does describe purported practices concerning emergency detention orders issued upon allegedly uncorroborated affidavits, reliance on an individual's speech or beliefs, retention of seizure records, and restrictions on later access to those records. (DE 29 at 4–5.) The inquiry, however, is not merely whether a plaintiff names a practice; it is whether the pleading plausibly alleges a county policy or custom that caused a federal constitutional injury.

A municipality may be liable under § 1983 only when execution of its own policy or custom causes the deprivation; respondeat superior is insufficient. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–95 (1978); *Wolf v. Fauquier Cnty. Bd. of Supervisors*, 555 F.3d 311, 321 (4th Cir. 2009). A single decision by an official exercising final municipal policymaking authority may, in appropriate circumstances, constitute policy. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). But the authority to make a particular decision is not necessarily authority to establish municipal policy; identifying the final policymaker for the challenged conduct requires examination of applicable state and local law. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–27 (1988); *Hunter v. Town of Mocksville*, 897 F.3d 538, 555–57 (4th Cir. 2018).

The 2021 claims arising from issuance and execution of the detention order remain untimely for the reasons stated above. Moreover, Plaintiff expressly alleges that the Florence County Probate Court acts as the County's "final policymaker" for emergency mental-health detentions. (DE 29 at 4.) The Court acknowledges that allegation, but the characterization alone does not establish that the Probate Court's judicial decisions constitute municipal policy. South Carolina law expressly provides that each county probate court is part of the State's unified judicial system. *See* S.C. Code Ann. § 14-23-1010. Although Plaintiff alleges that Florence County performs probate-related administrative and recordkeeping functions (DE 29 at 2), he pleads no facts establishing that Florence County possessed or delegated final municipal policymaking authority over the judge's exercise of state judicial powers, adopted a

rule directing the challenged seizure, or ratified the alleged unconstitutional conduct. Nor does the single detention order, without supporting facts concerning other incidents, plausibly establish a recurring County custom that caused the asserted violation. The Court does not decide whether the underlying affidavit was sufficient under state law; the question here is whether an actionable constitutional injury is plausibly attributable to Florence County.

As to the asserted recordkeeping practice, the January 2026 Sheriff's Office response indicates that certain requested reports, names, and recordings were not located or available. (DE 29-3 at 2.) The response does not, without additional factual allegations, establish that the records once existed and were intentionally destroyed or that the County itself instituted a recurring practice of withholding them. Likewise, the Probate Court's request that Plaintiff appear with identification or obtain records through an appropriate procedure, even if burdensome, does not plausibly establish an unconstitutional policy of Florence County. (DE 29-2 at 2–4.) The Court, therefore, overrules the objection to dismissal of the municipal-liability theories, while clarifying that Plaintiff identified alleged practices but did not adequately plead a constitutional deprivation attributable to a County policy or custom.

**D. The Later Record-Access Allegations**

Plaintiff maintains that the 2025–26 efforts to obtain probate and law-enforcement records constitute a new, independent constitutional wrong. (DE 36 at 13–15.) These allegations differ in time from the June 2021 detention and are not

dismissed simply because they arose from a request for information about that earlier event. The Court instead considers whether they plausibly state a federal cause of action.

A dispute over obtaining government records does not, without more, establish a damages claim under § 1983. Construed as a backward-looking denial-of-access-to-courts theory, the pleading must identify a nonfrivolous underlying claim and a judicial remedy that the alleged obstruction rendered unavailable. *See Christopher v. Harbury*, 536 U.S. 403, 414–16 (2002). Although Plaintiff filed this action, that fact alone does not resolve whether access was impaired. The pleaded difficulty, however, is one of causation and actual loss: the specifically documented refusals or access conditions occurred after the limitations period for the 2021 injuries had expired, and Plaintiff does not plausibly identify an otherwise available judicial remedy lost because of those later actions. (DE 29-2 at 2–6; DE 29-3 at 2.) The correspondence also distinguishes the Sheriff's Office's inability to locate requested records from the Probate Court's conditions for access to confidential records; neither establishes, without further facts, unconstitutional obstruction attributable to the County. Thus, the 2025–26 allegations do not state an independent federal due-process or court-access claim, although they occurred within the applicable limitations period.

### E. Remaining Objections and State-Law Claims

Plaintiff insists that the seizure, search, confinement, and related medical conduct were serious constitutional violations and that the Court should permit discovery before assessing them. (DE 36 at 13–16.) The Court has not presumed that

emergency psychiatric detention can never violate the Constitution. Nor does it decide whether McLeod could qualify as a state actor or whether a physician supplied additional authorization for detention beyond an initial twenty-four-hour examination period. Those questions concern merits that need not be resolved where the claims based on the 2021 events are untimely. The Court has considered the distinct theories fairly suggested by the pro se pleading; liberal construction does not negate a facial limitations bar or supply missing facts essential to an independent later-arising claim. *See Erickson*, 551 U.S. at 94.

Plaintiff also challenges the Clerk's designation of the nature of suit as "prisoner civil rights." (DE 36 at 3–4, 16–17.) The Amended Complaint identifies Plaintiff as a Florida resident and does not allege that he was a prisoner when this suit was filed. (DE 29 at 2.) The designation is administrative and does not affect jurisdiction or the applicable IFP screening authority under § 1915(e)(2)(B). The Court will direct correction of the designation but otherwise denies this objection as a ground to disturb dismissal.

Finally, Plaintiff objects to declining supplemental jurisdiction over his state-law false-imprisonment and negligence theories. (DE 36 at 16.) Because all federal claims are dismissed before service or discovery, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). The state-law claims are dismissed without prejudice, without a decision on their merits or on any applicable state limitations or

tolling issue. The pleading does not establish an independent basis for the Court to retain those claims.

## IV. CONCLUSION

After conducting de novo review of Plaintiff's specific objections and reviewing the remaining record, the Court **ADOPTS** the Report and Recommendation (DE 33) **AS MODIFIED AND SUPPLEMENTED** herein. Plaintiff's objections (DE 36) are **OVERRULED** to the extent they seek continuation of the federal claims or exercise of supplemental jurisdiction over the state-law claims. The Court has afforded Plaintiff notice and an opportunity to amend. (DE 18.) The First Amended Complaint (DE 29) is **DISMISSED WITHOUT PREJUDICE**, without issuance and service of process and without further leave to amend in this action. The state-law claims are dismissed without prejudice under § 1367(c)(3), without any merits adjudication.

The Clerk is **DIRECTED** to correct the administrative nature-of-suit designation, as appropriate, to reflect that Plaintiff is not proceeding as a prisoner. In light of this disposition, Plaintiff's Motion for Appointment of Pro Bono Counsel (DE 39) is **DENIED AS MOOT**. The Clerk shall enter judgment pursuant to Federal Rule of Civil Procedure 58 and close this case.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
November 17, 2026